United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMER DENILSON MIRANDA OROZCO,<br>Petitioner,<br>v.<br>WARDEN OF CALIFORNIA CITY DETENTION FACILITY, *et al*.,<br>Respondents. | Case No. 1:26-cv-09107 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. Nos. 1, 4 |

Petitioner Wilmer Denilson Miranda Orozco is an immigration detainee currently awaiting the outcome of his removal proceedings. In his petition for writ of habeas corpus and motion for temporary restraining order, he seeks release from ICE custody, arguing that his detention violates his Fifth Amendment right to due process. *See* Dkt. No. 1 at 27–28. For the reasons that follow, the Court GRANTS the petition and orders that Petitioner be provided a constitutionally adequate bond hearing. The motion for a temporary restraining order is resolved as moot.

## I. BACKGROUND

Petitioner entered the United States in April 2021 and was taken into DHS custody shortly thereafter. Dkt. No. 10-1 at 13. As he was a minor at the time of his arrest, immigration authorities designated Petitioner as an unaccompanied minor. *Id*. They then released Petitioner to the custody of his uncle. Dkt. No. 1 at 34.

Following his release, Petitioner alleges that he began living with family and attending church. *Id*. at 10. He also began attending school and applied for Special Immigrant Juvenile Status. *Id*. at 10–11. He received a social security number and was authorized to lawfully work in

the United States following the filing of his immigration application. *Id*.

Petitioner was arrested for battery on August 8, 2026, and the police contacted ICE. Dkt. No. 10-1 at 2, 11. ICE subsequently issued a warrant for Petitioner's arrest, and he was transferred from state to ICE custody on August 11, 2026. Dkt. No. 10-1 at 11. Petitioner was served with a Notice of Custody Determination informing him that he was detained under 8 U.S.C. § 1226(a) on the day of his transfer. *Id*. at 6. The Notice also included a section for Petitioner to complete, through which he could request a custody redetermination hearing from an immigration judge. *Id*. Petitioner completed the section and requested a hearing. *Id*.

Petitioner finally received the hearing two months later. At the hearing, the immigration judge placed the burden on Petitioner to show that he was not a danger to the community or a flight risk. Dkt. No. 11-1 at 1. Release was denied with the immigration judge finding that Petitioner had "not demonstrated that he [was] not a danger to the community due to his recent arrest for battery[.]" *Id*.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Respondents oppose relief, arguing that Petitioner has received the process he is entitled

under § 1226(a). Dkt. No. 10 at 3–4. They further argue that Petitioner should be required to exhaust his administrative remedies by appealing his bond denial to the Board of Immigration Appeals ("BIA") before seeking habeas relief. *Id.* at 4. Both arguments lack merit.

**A. Exhaustion**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). As the Ninth Circuit has explained:

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). However, even if these factors weigh in favor of exhaustion, "there are a number of exceptions to the general rule[,] … such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

An exception applies to Petitioner's claim that the procedures under § 1226(a), as applied to him, violated his procedural due process rights. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (waiver of exhaustion requirement proper where the petitioner raised a purely legal challenge). This type of claim cannot be reviewed by the BIA because it "is well settled that [the BIA] lack[s] jurisdiction to rule on the constitutionality of the [Immigration and Nationality Act] and [its] regulations." *In re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997); *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995) ("Clearly the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws"). Accordingly, Petitioner's claims challenging the constitutionality of his continued detention under § 1226(a) may be reviewed by this Court.

**B. Due Process**

Turning to due process, numerous courts have found that where an unaccompanied minor

is released by immigration authorities to a sponsor, he obtains a liberty interest in his continued freedom. *See, e.g.*, *Sergio S.M. v. Noem*, No. 1:25-CV-01973-KES-HBK (HC), 2025 WL 3768206, at *3 (E.D. Cal. Dec. 31, 2025); *R.D.T.M.*, 2025 WL 2686866, *4–5; *F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025); *P.A.H.E. v. Noem*, No. 1:26-CV-01164-DJC-JDP, 2026 WL 451662, at *2 (E.D. Cal. Feb. 17, 2026). Here, immigration officials' release of Petitioner to his uncle's custody in 2021 allowed him to live at liberty while his immigration case progressed. Under these circumstances, Petitioner has a protected liberty interest in his continued release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause").

Where a noncitizen has a protected liberty interest, courts in this circuit have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Regarding the first *Mathews* factor, Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending his civil removal proceedings for over five years. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner's release allowed him to attend school, apply for immigration relief, and work to support his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, the statute that governs the detention and release of unaccompanied minors encountered at the border provides that in making custody determinations immigration authorities should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). Petitioner's release in 2021 then reflected a determination by immigration authorities that he was not a flight risk or danger to the community. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" ... so long as the minor is not dangerous .... Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." (citing 8 U.S.C. § 1232(c)(2)(A)), *aff'd* 905 F.3d 1137 (9th Cir. 2018). Given this finding, "DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026).

Generally, "the risk of an erroneous deprivation [of liberty] is high" when "[the Petitioner] has not received any bond or custody redetermination hearing" where the Government is required to show changed circumstances justifying revocation of a noncitizen's release. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Here, Petitioner did receive something of a post-deprivation hearing where the immigration judge made a dangerousness finding based on Petitioner's recent arrest. However, that bond hearing was insufficient to protect Petitioner's liberty interests because it placed the burden of proof on Petitioner, rather than on the Government. Where, as here, the Government alleges that changed circumstances render re-detention necessary, the appropriate remedy is a hearing at which the Government has the burden of making this showing. *See Calvillo v. Chestnut*, No. 1:26-cv-00569-DC-CSK (HC), 2026 WL 253627, at *3 (E.D. Cal. Jan. 31, 2026) (ordering a constitutionally adequate bond hearing where "Respondents [had] viably alleged that Petitioner's re-detention was precipitated by a changed circumstance arguably indicating that Petitioner [was] a threat to public safety"). Petitioner has not received this protection.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a

strong interest in enforcing the immigration laws, the Government's interest in detaining Petitioner without a constitutionally adequate hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d 1094. Accordingly, Petitioner's current detention violates his Fifth Amendment due process rights and requires a bond hearing at which the Government bears the burden of proof.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Petition is GRANTED. IT IS HEREBY ORDERED that Respondents provide Petitioner with a constitutionally adequate bond hearing before an Immigration Judge at which the Government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of this Order, or a later date upon Petitioner's request. Respondent's must provide Petitioner with notice of any such bond hearing at least seven (7) days in advance of the hearing.

The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: November 20, 2026

EDWARD J. DAVILA
United States District Judge